STRATFORD P. DAVIDSON, as Trustee, etc., Appellant and Respondent, *v.* THE WESTCHESTER GAS-LIGHT COMPANY, Appellant and Respondent.

The effect of the provision of the act of 1872 (§ 2, chap. 374, Laws of 1872), amending the act of 1848 (Chap. 37, Laws of 1848), providing for the

formation of gas-light companies which authorizes a corporation organized under it to purchase property and borrow money necessary for its corporate business, and to issue bonds, and mortgage its property and franchises to secure any debts so contracted, was to supersede the provisions of the Amendatory Act of 1867 (Chap. 480, Laws of 1867), which required the written consent of two-thirds of the stockholders to the execution of a mortgage.

A corporation organized under the act as amended has power to purchase property for the corporate purposes, to contract a debt therefor, if necessary, and to issue bonds, and mortgage its property and franchises to secure the payment thereof.

The provision of the original act (§ 3), requiring the directors of such a corporation to be stockholders, does not apply to the original organization. The persons named in the certificate of incorporation are constituted directors for the first year of the existence of the corporation, with full power to act as such.

Where, therefore, the persons named in the certificate of incorporation of such a company, as its directors, entered into a contract with plaintiff, to purchase of him certain property required by the company, to pay him a certain amount in cash, and the balance in the stock of the company ; and plaintiff, in lieu of the cash, accepted the company's bonds, secured by mortgage upon its property and franchises, *held,* that the mortgage was valid.

In an action to foreclose the mortgage, another gas-light company, which had succeeded to the rights of the mortgagor, set up a counter-claim in substance, that A., the real principal for whom plaintiff acted, and certain associates of his who were stockholders of defendant, and in certain other gas-light companies, all of which were interested in certain patents, requested and instigated defendant to make experiments to test the value of such inventions, and by the aid of such services the other corporations were enabled to sell the rights owned by them for a large price. Defendant did not allege any express agreement or promise to pay for such services, but claimed an implied promise from the fact of the request and the benefits derived. *Held* untenable; and that the facts did not constitute a counter-claim.

A promise to pay for services may only be implied by the courts, where they were rendered under such circumstances as authorized the party performing to entertain a reasonable expectation of payment by the party soliciting performance.

Defendant, the mortgagor, executed a perpetual lease of its property to another corporation, to which was transferred also all of its capital stock, and said other company assumed the payment of the mortgage ; it attached certain fixtures to the mortgaged real estate, which it claimed, under the rule applicable between landlord and tenant, were not subject to the lien of the mortgage. *Held* untenable ; that said lessee was for all practical purposes the actual owner of the property, the nominal

lessor simply holding the title as trustee, and so the rule did not apply, and the fixtures when annexed became part of the realty.

The said lessee after it took possession laid additional mains and pipes, which were affixed to the mains laid by the mortgagor, but at points remote from the mortgaged real estate. *Held*, that they did not become changed in their nature as personal property by such attachment and were not subject to the mortgage.

(Argued June 11, 1885 ; decided October 6, 1885.)

THESE are cross-appeals from different portions of a judgment of the General. Term of the Supreme Court, in the second judicial department, entered upon an order made December 24, 1884, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*Calvin Frost* for plaintiff. The Westchester Gas-light Company had the right to mortgage its property. (Laws of 1872, chap. 374; Sedgwick on Stat. and Const. Law, 123, 124, 125 ; Downs on Statutes, 531.) The objection to the mortgage, upon the ground that the directors at the time of making thereof were not the holders of the stock of the company, is untenable. (Laws of 1848, chap. 37, § 1.) The act of the directors in making the mortgage was ratified by the proceedings of such directors at the subsequent meetings, after they had become stockholders. (*Whitney* v. *Weyman*, 101 U. S. 392 ; *Babney* v. *Stevens*, 10 Abb. [N. S.] 39.) The mortgage and bonds having been given for the purchase-money of the property, the lien attached *eo instanti*, as a part of an indivisible transaction. (*Dusenbury* v. *Hurlburt*, 59 N. Y. 241 ; *Coman* v. *Lakey*, 80 id. 345 ; *Greenpoint Co.* v. *Whitin*, 69 id. 338.) The machinery placed on the premises by the Yonkers Fuel Gas Company is covered by the mortgage of plaintiff. (*Loughran* v. *Ross*, 45 N. Y. 792 ; *Washburn* v. *Sprout*, 16 Mass. 448 ;

53 N. Y. 377; *Globe Marble Mills Co.* v. *Quinnout*, 76 id. 23; *Ford* v. *Cobb*, 20 id. 344; *Tifft* v. *Horton*, 53 id. 377.)

*Ralph E. Prime* and *S. H. Thayer, Jr.*, for defendants. Personal property put upon mortgaged premises, by a tenant occupying under a lease, and placed there for the purpose of trade and manufacture, in which the tenant used the premises, though affixed to the freehold, does not become a part of the realty. (1 Washburn on Real Property, 8, 868; *Ford* v. *Cobb*, 20 N. Y. 344; *Mott* v. *Palmer*, 1 id. 564; *Van Ness* v. *Packard*, 2 Peters, 141; *Miller* v. *Plumb*, 6 Cow. 665; *Cook* v. *Champlain T. Co.*, 1 Den. 91; *Holmes* v. *Tremper*, 20 Johns. 29; *Tift* v. *Horton*, 53 N. Y. 382; *Livingston* v. *Sulzer*, 19 Hun, 375; *Ombony* v. *Jones*, 19 N. Y. 234.) Even as between mortgagor and mortgagee, this property, removable without injury to the inheritance, and none of it even attached to the other machinery and pipes except by bolts and lead-plugged caps, is to be deemed personal property, and would as against a mortgagee pass by assignment for benefit of creditors. (*Wells* v. *Maples*, 15 Hun, 90.) Capital stock may not always mean the paper representing shares, but does mean property or money contributed to the corporate fund, and the scrip represents the holder's right to participate or partake in the surplus or profits. (*Burrill* v. *Bushwick R. R. Co.*, 75 N. Y. 211, 216; *Barry* v. *Merch. Ex. Co.*, 1 Sandf. Ch. 280; *State* v. *Morristown F. Asso.*, 3 Zabr. 195.) When the legislature enacts that, as defendant, such a company may mortgage to secure payment of a debt for carrying on its operations, the legislature have as effectually forbidden a mortgage for raising money to carry on operations or for any other purpose than an actual debt already incurred for carrying on its operations, as it would have been if it were so expressly stated. That which is to be inferred of necessity is as strong as though expressly stated. (*Morey* v. *F. L. & T. Co.*, 14 N. Y. 306; *Curtis* v. *Leavitt*, 15 id. 259; *Sill* v. *Corning*, id. 300; *People* v. *Draper*, id. 568; *Matter of Bonnaffe*, 23 id. 177; *People* v. *N. Y. C. R. R. Co.*, 24 id. 495; *Robins* v. *Fuller*, id. 577; *People* v. *Dolan*,

36 id. 65; *Fellows* v. *Heermans*, 13 Abb. [N. S.] 7.) The mortgage cannot be sustained as a lien for purchase-money, for the vendor's lien is destroyed by his taking back a purchase-money mortgage or even a note or other obligation. (*Gaylord* v. *Knapp*, 15 Hun, 87; *Hazeltine* v. *Moore*, 21 id. 335; *Weston* v. *Syracuse*, 17 N. Y. 110; *Garrison* v. *Howe*, id. 458.) The answers of the Yonkers Fuel Gas Company ask affirmative relief. It is a stockholder of the mortgagor, and has a right to have the corporation of which it is a stockholder relieved of the mortgage if it is illegal. (*Greenpoint S. Co.* v. *Whitin*, 69 N. Y. 333.) The receiver is also entitled to relief as such. (*Vail* v. *Hamilton*, 85 N. Y. 543; *Curtis* v. *Leavitt*, 15 id. 45.) Where an action is brought by a trustee, so much of the demand against the person whom the trustee represents as will satisfy the claim "must be allowed as a counter-claim." (Code Civ. Pro., §§ 501, 502, subd. 3.) Counter-claim or set-off may be pleaded in an action to foreclose a mortgage. (*Hunt* v. *Chapman*, 51 N. Y. 557; *Bathgate* v. *Haskin*, 59 id. 537; *Chapman* v. *Robertson*, 6 Paige, 627; *Holden* v. *Gilbert*, 8 id. 208; *Roosevelt* v. *Bk. of Niagara*, Hopk. 579.)

RUGER, Ch. J. This is an action by the plaintiff, as trustee of certain bondholders, to foreclose a mortgage given for their security, on October 15, 1875, by the Westchester Gas-light Company, upon certain real and personal property described substantially as follows: Certain parcels of land in the city of Yonkers and the tenements, hereditaments and appurtenances thereto belonging, " and all the buildings, gasometers, retorts, meters, and all machinery, tools and implements belonging to said party of the first part and now in or upon the said premises hereinbefore described ;" and also upon their right, title and interest in a certain invention for manufacturing illuminating gas ; and also the rights, privileges, franchises, property and benefits acquired by them through several grants and conveyances from Yonkers to construct and lay gas-pipes and mains in the streets of said city ; and all gas-pipes already laid, owned and possessed by said party of the first part in said city of

Yonkers; and all the rights, privileges and permission to lay gas-pipes in and through the streets and avenues of said city owned, used and held by the party of the first part. The mortgagors and their lessees, the Yonkers Fuel Gas Company, the receiver of both of said companies, and certain of their creditors, were made defendants. The companies and their receivers alone appear and defend. The answers allege several defenses, among which are, *first*, the invalidity of the mortgage for want of statutory power on the part of the corporation to give it, for the purposes stated in the instrument; *second*, the omission, to obtain the written consent for its execution, of two-thirds of the stockholders of the mortgagor; *third*, the want of authority, by reason of the absence of the proper qualifications as stockholders, on the part of the directors assuming to authorize its execution; *fourth*, certain claims set up by the Yonkers company, by way of counter-claim; and *fifth*, that the claim included property not covered by the mortgage, for the reason that it had been added to the mortgaged property, subsequent to its execution by certain lessees, for the purposes of trade and manufacture. The defenses will be noticed in the order in which they have been stated.

*First.* The mortgage recited that it was given to secure the payment of bonds to the amount of $50,000, to be issued for the purpose of borrowing that sum to carry on the operations of the company. The trial court found, as matter of fact, that it was delivered to the plaintiff in payment of a part of the purchase-price of the mortgaged property. This finding was based upon uncontroverted evidence, and must here be assumed conclusive. By the terms of purchase, the Westchester Gas-light Company bought the property described in the mortgage of Davidson, the plaintiff, agreeing to pay therefor $50,000 in cash and $200,000 in the stock of the company. Davidson accepted the mortgage in lieu of the cash payment, and it was competent for him to do so without impairing its validity, and for the company to transfer it to him in lieu of the money which it was authorized to borrow for the purpose of making such payment. The result accomplished by this transaction

was the precise equivalent of a delivery to a creditor, to secure a loan, and did not constitute a diversion of the mortgage from its intended object. The agreement of purchase created a debt, and the purpose of its creation being to enable the company to carry on its business operations, the transaction was brought within the terms of the statute authorizing such a corporation to mortgage its property. (§ 2, chap. 374, Laws of 1872.) By section 2 of chapter 37 of the Laws of 1848, being the original act, under which the company in question was organized, it was prohibited from mortgaging its property for any purpose whatever. This act was amended in 1867 by chapter 480 of the laws of that year, authorizing such a company, upon the written consent of two-thirds of its stockholders, to mortgage its real estate, for the purpose of securing the payment of any bonds that may be issued, or debt that may be contracted, for the extension or improvement of its works. The act was again amended by the law of 1872, referred to, whereby such corporations were authorized to purchase, hold and convey any real or personal estate necessary to enable them to carry on their corporate operations, and also to borrow such sums of money, not exceeding one-half of their capital, as might be necessary to carry on their business, and to issue and dispose of their bonds for any amount so borrowed, and mortgage the corporate property, and franchises, of the company, to secure the payment of any debt contracted by it, for the purposes aforesaid. The obvious effect of the latter act was to supersede the provisions of the law of 1867 requiring the assent of two-thirds of its stockholders, as a condition to the exercise of the right to mortgage, and to enlarge the power of the company to mortgage, so as to include personal property and franchises, as well as real estate, and to cover the payment of all debts contracted for the legitimate operations of the corporation.

The power to purchase property for the purposes of the corporation, and, if necessary, to contract a debt therefor, is expressly given to the corporation, and authority to mortgage its property for the payment of such debt is clearly within the

spirit as well as the letter of the statute. It would seem, therefore, that the first and second defenses are not well founded.

*Third.* The objection to the validity of the mortgage, upon the ground that the persons acting as a board of directors, for the mortgagor, were not at the time of passing the resolution authorizing the mortgage, stockholders of such company, and were, therefore, not qualified under the statute to act as such directors, is not tenable. The provisions of the statute (§ 3, chap. 37, Laws of 1848) requiring the stock, property, and concerns of such company to be managed by directors who shall respectively be stockholders of the company, and who shall, except the first year, be annually elected by the stockholders, do not apply to the original organization of a company formed under said act. The language of section 1 of the act, by express terms, makes the persons named in the certificate of incorporation, as such, directors of the company for the first year of its existence, and confers upon such persons full power to act as directors in the performance of any corporate duty after the filing of such certificate. The corporate authority of such an organization must from necessity be coincident with the inception of its corporate existence, and antedate the acquisition by it, of property or the issue of stock certificates representing such property. It is conceded that the persons passing the resolution were those named as directors in the original certificate of incorporation, and that the purchase of the property in question was one of the first official acts of the corporation; that the property thus purchased of the plaintiff furnished the basis of capital, upon which their corporate stock was distributed, and that certificates for its entire amount in payment of such purchase were issued and delivered to the plaintiff simultaneously with the conveyance of the property to the corporation by him and the delivery to him of the mortgage. It is quite obvious that the statute cannot be made effective under any other interpretation, and it is a primary rule of construction to give some effect to the expressions of the legislative will, if consistent with a reasonable interpreta-

tion of its language. If its provisions be so construed as to require the existence of stockholders before there is a legal organization, it must necessarily defeat the creation of any corporation under it, as it is quite manifest that stock cannot be owned in a corporation, which has itself no legal existence The terms of the act providing for the appointment of directors for the first year do not require such an interpretation, and it is contrary to reason and settled rules of construction to ascribe to a statute such a meaning as will nullify its operation if it is capable of any other interpretation.

*Fourth.* We do not think the circumstances detailed in the answer show any liability on the part of Mr. Astor which constitutes a valid counter-claim in behalf of the Yonkers company, against the plaintiff's demand. The claim is that Astor, the plaintiff's sole beneficiary, and others, his associates, became indebted to the Yonkers Fuel Gas Company, for certain services rendered by it at the "instigation and request" of said Astor and his associates, in illustrating by experiment and otherwise the manufacture of water gas by two certain processes, called the Strong patent, and the Lowe patent. It is also alleged that the right to manufacture such gas in the city of Yonkers was owned exclusively by said Yonkers company, and in all other places in the United States in certain described proportions by the American Gas, Fuel and Light Company and the Strong Gas, Fuel and Light Company, in all of which companies the said Astor and his associates were alleged to have been, either directly or indirectly, stockholders, and by the aid of which services the last-mentioned companies were enabled to sell for a large price, rights owned by them. It is not claimed that these services were rendered under any express agreement or promise of payment therefor, but it is argued that a promise to pay for such services may be inferred from the fact of the request to perform them, and the benefits derived from their performance. We do not think that such a promise can, under the circumstances of this case, be implied. A promise to pay for services is sometimes implied by law ; but this is done only when the court can see that they were

rendered under such circumstances as authorized the party performing to entertain a reasonable expectation of their payment by the party soliciting the performance. (Story on Cont., § 12.) The circumstances set forth in the answer do not seem to justify such an inference. If any promise could be implied it would in equity seem to arise against the corporation benefited, instead of some of its individual stockholders who might thus be subjected to burdens out of all proportion to the extent of their interest in the property benefited. Neither could a several promise be inferred as against one of several persons at whose joint instigation and request such services were rendered. Reason and justice forbid the assumption that there could have been any expectation, or understanding, on the part of any of the parties to this transaction, that one of the associates intended to assume the sole liability for expenses, which necessarily inured to the benefit of many other persons. It appears also that the defendant, The Yonkers Fuel Gas Company, was a part owner and interested in the processes illustrated, and the persons requesting and instigating such services were officers and stockholders of that company. Such services were performed apparently in the line of the corporate business of such company and were quite as beneficial to its own interests as to those of others. It can hardly be claimed that a cause of action arose in its favor, against its own stockholders by reason of experiments made for its own benefit, with its own property even if made at the suggestion of such stockholders. If stockholders in a corporation have sufficient influence to induce a certain course of procedure, in the prosecution of the corporate business, it is difficult to see what liability they incur to the corporation in the event even that such course finally turns out to be unprofitable to the company. Any ulterior object which such persons had in deriving incidental benefits from such course of action, would not render, them liable for the incidental expense, in the absence of an agreement to become thus liable. If the managers of that company have illegally prostituted their authority as officers to use its funds for their personal advantage, they would doubtless be liable in an ap-

propriate form of action for such illegal conduct, but it certainly would not, under the circumstances alleged in the answer, be upon the theory of an implied promise to repay the funds thus misapplied. The action in such case would be to recover for the wrong and injury done to the corporate rights, and would not be the subject of a counter-claim in an action against the corporation upon contract.

*Fifth.* We are also of the opinion that the trial court erred in applying the rule, respecting fixtures which obtains between landlord and tenant, to the facts of this case. It is not claimed that such relations actually existed between the parties; but it is argued that their situation was analogous to that of landlord and tenant, and rendered the application of the rule obtaining between such parties proper. Those relations, we think, were practically and potentially those of mortgagor and mortgagee, and they were thus brought within the rule applicable to the relations existing between vendor and purchaser. (*Murdock* v. *Gifford,* 18 N. Y. 28.) In November, 1880, the Yonkers company entered into a contract with the Westchester company, by which it acquired not only the possession under a perpetual lease of its gas factory and property, but also its virtual ownership, by the acquisition of its entire capital stock, and in consideration thereof assumed the payment of the mortgage in question.

The Yonkers company thus became primarily liable for the payment of the mortgage debt, and the Westchester company was thereafter, liable only as surety for such payment. The lessors, thereafter, occupied the position of trustees merely for the sole purpose of holding the title for their lessees, who were for all practical purposes the actual owners of the property. They had the same interest in its permanent improvement, and the same independence of any control in its management that any owner has over his property. The consideration of benefit to trade and manufacture, which induces the application of the liberal rule prevailing as to fixtures between landlord and tenant, does not apply to such a situation as appears in this case. The rule fails with its reason. No serious question was

raised on the trial but that the property attached to the real estate would have become, by its annexation to the realty, a part thereof, except for the application of the rule referred to. Indeed the answer sets up as the sole ground for the claim that it was not covered by the mortgage, the fact of its attachment by a tenant, for the purpose of trade and manufacture alone. Having arrived at the conclusion that this claim is not tenable, it follows that so much of the tools, implements and machinery in question as were attached to, or became essential to the use of the buildings and machinery erected upon the real estate mortgaged, for the purposes of manufacturing illuminating gas, became thereby a part of the realty and subject upon annexation to the lien of the mortgage.

We are unable, however, to see how the mains and pipes subsequently added to the mortgaged property could be brought within the lien of the mortgage. That instrument by its terms refers only to existing property, and those pipes and mains having been affixed at points remote from the real estate described, did not become changed in their nature, as personal property, by virtue of such attachment.

The judgment should, therefore, be affirmed as to the part affected by defendant's appeal, and reversed on plaintiff's appeal so far as it exempts property affixed to the real estate from the lien of the mortgage, with costs.

All concur, except EARL, J., not voting.

Judgment accordingly.