GRAND RAPIDS FURNITURE COMPANY v. GRAND HOTEL AND OPERA HOUSE COMPANY, ET AL.

SALES—CONDITIONAL SALES — NOTICE—CORPORATIONS — STOCKHOLDERS —EVIDENCE—PLEADINGS—AGREED STATEMENT OF FACTS—PRESUMPTIONS—STATUTORY CONSTRUCTION.

1. When a contract for the sale of personal property provides that title shall not pass until payment, and in the meantime the property shall remain the property of the vendor, who, in case of default, has the right to repossess himself of and remove the property without legal process, the vendor may,

when not otherwise provided by statute, reclaim the property, even though it be in possession of a third party, who has taken it in good faith and without notice.

2. Conditional sales, to be valid against a purchaser or judgment creditor of the vendee or lessee in possession without notice, must be in writing, signed by the vendee or lessee and filed in the office of the County Clerk of the county where the property is situated.   (R. S., Sec. 2837.)

3. Chattels were sold under a conditional written contract that title should not pass until 'payment, but the contract was not filed in the County Clerk's office as required by statute to bind subsequent purchasers from the vendee without notice. The property was afterwards sold to two persons with notice of the contract, and they, with a third party, incorporated the defendant company, each taking one share of stock, the third party acting by tacit consent as manager of the company, and it did not appear that he knew of the contract. The two former sold and delivered the property to defendant company. No stock other than the three shares taken by the incorporators was sold, nor was there an election of officers of the company. The names of the trustees did not appear. It was admitted in the statement of facts that the company was duly organized and existing; that it was in possession of the property and had paid its vendors therefor. It did not appear that the incorporation was contemplated when the purchase was made by defendant company's vendors, or that such vendors were trustees, or officers or had ever acted for the company in any way. *Held,* in a suit by the original vendor to recover the property, that notice to the defendant company was not shown; and that the principle was not applicable that a contract made for a projected corporation is to be treated as a proposal to the company when it comes into existence, and that the acceptance of its benefits by the company justifies the inference that it has accepted or adopted it.

4. It being an admitted fact in the case that the company was duly organized; that it had money, and paid it out for the property in its possession, including the property in controversy, and that one of its incorporators acted as its manager, it cannot be treated in the case as a mere "naked body" without capacity to hold property, so as to render its incorporators personally liable as being themselves in possession of the property instead of the company.

5. From the admitted fact that the three incorporators of defendant company each held one share of stock, and that no other stock was sold, it is not a necessary presumption that said incorporators were named in the certificate of incorporation as the trustees of the company for the first year; notwithstanding that the statute requires trustees to be stockholders, and that the trustees for the first year shall be named in the certificate.

6. Since it is impossible for a corporation to have stockholders before it is in existence, the statute is not to be so construed as to require the persons named in the certificate of incorporation as trustees for the first year to be stockholders when the certificate is filed.

7. It is contrary to reason and the settled rules of construction to ascribe to a statute such a meaning as will nullify its operation, if it is capable of any other interpretation.

8. The existence of defendant company as a corporation *de facto* was not a question in the case; since plaintiff admitted by its pleadings that the defendant was a duly organized and existing corporation, and, in the agreed facts, that it was duly organized and incorporated; that it had a general manager; that it purchased and paid for the property in controversy, took possession thereof, and was in possession when suit was brought.

9. It was stipulated in the agreed statement of facts that the only notice defendant company had of plaintiff's lien was such as was disclosed by the depositions of certain witnesses, and what appeared elsewhere in the agreed statement, if such depositions and facts disclose notice. *Held,* that the effect of the stipulation is that if the court shall find that notice is not disclosed by the designated evidence, then it is agreed that there was no notice; and the court having so found, it stands as a stipulation that there was no notice; and the question is, therefore, not in the case whether it would have been incumbent upon defendant to show want of notice, and that the evidence was insufficient for that purpose.

10. Where the existence of a fact is stipulated, no question can arise as to the sufficiency of the evidence to establish it.

[Decided December 9, 1902.  Rehearing denied April 13, 1903.]
(70 Pac., 838; 72 Pac., 687.)

Error to the District Court, Sweetwater County, Hon. David H. Craig, Judge.

Action by the Grand Rapids Furniture Company against the Grand Hotel and Opera House Company, A. M. Gildersleeve, Augustine Kendall and Walter H. Revell, to recover certain personal property. The plaintiff claimed the property as vendor in a conditional sale to one H. H. Edgar. The stipulated facts were that, on September 28, A. D. 1895, H. H. Edgar was the owner of certain real estate, in Rock Springs, Sweetwater County, in the State of Wyoming, upon which he was then erecting an opera house building. On said date he purchased of the plaintiff 642 opera chairs, agreeing to pay therefor the sum of ten hundred fifty-nine dollars and sixty cents ($1,059.60), as follows: One-third cash, balance in three months, interest at the rate of eight per cent. per annum, said chairs to be used as seats in said opera house as a place of amusement. The plaintiff delivered said chairs to Edgar, who attached three hundred forty (340) thereof to said building with small screws, the balance not being fastened or attached to said building in any manner, but being fastened together in sets of five on slats and movable at will. In the contract of purchase it was agreed as follows: "It is mutually agreed and understood that the title to the seats, or any portion thereof as above described, shall not pass to said second party, but shall be and remain in said the Grand Rapids School Furniture Company, party of the first part, until full payment therefor in cash shall have been made to said first party. And should said second party at any time fail to make payments or settlements as stipulated herein, party of the first part may, at their option and without notice, take possession of said chairs."

Said contract of purchase was never filed in the office of the County Clerk of Swetwater County. All of said sum of money has been paid to plaintiff except the sum of three hundred sixty-one dollars and forty cents, which it claims with interest.

On March 29, A. D. 1897, the said Edgar sold, for a valuable consideration, and made and executed and delivered to Ed Thorpe, Charles Swanson, Gus Swanland and A. T. Chalice his warranty deed for the real estate above decsribed, the opera house building thereon and chairs in controversy, the said Ed Thorpe, et al., at the time they purchased said property, having notice that the plaintiff claimed a lien upon the said chairs for the said amount of three hundred sixty-one and forty one-hundredths dollars and interest, and which sum said Ed Thorpe and others agreed to pay, having assumed the same.

At the time of said sale the said Edgar delivered the possession of the chairs in controversy to the said·Thorpe, et al., who remained in possession of the same until the sale or conveyance to said Kendall and Gildersleeve, when they delivered possession of the same to the said Kendall and Gildersleeve, who remained in the possession of the same until their sale to the defendant, to which said Kendall and Gildersleeve delivered possession of the same.

At the institution of this suit the property in controversy was in the possession of the defendant, and that prior to the institution of this suit the plaintiff demanded of the defendant the possession of the said property, but that the defendant refused to deliver the same to the plaintiff.

That on February 15, A. D. 1898, Ed Thorpe, et al., the owners of said real estate, in consideration of one dollar, executed and delivered their agreement for a deed for said real estate to the said A. M. Gildersleeve, and also their agreement for a bill of sale of the personal property on the premises; that thereafter, on February 25, A. D. 1898, the said Ed Thorpe, et al., in pursuance of the said agreement theretofore entered into between them and the said A. M. Gildersleeve, for the consideration of seven thousand one hundred and seventy-five dollars to them paid by the said Augustine Kendall and A. M. Gildersleeve, made, executed and delivered to the said Augustine Kendall and A. M. Gildersleeve a warranty deed conveying to them the said

real estate, and also executed to said Kendall and Gildersleeve a bill of sale for all of the personal property in said building situate on said premises, and including the chairs herein in controversy and which purchase price was a fair value of said property.

That the plaintiff is a corporation duly organized and existing under and by virtue of the laws of the State of Michigan.

That the defendant, the Grand Hotel and Opera House Company, was duly organized and incorporated under the laws of the State of Wyoming on March 8, A. D. 1898, its incorporators being A. M. Gildersleeve, Augustine Kendall and Walter H. Revell, each of said incorporators subscribing for one share of the capital stock of said company, the amount of said capital stock being $25,000, divided into 500 shares of the par value of $50 each. That since the incorporation of defendant, no stock of said corporation has been sold to any person except Kendall, Gildersleeve and Revell, being only one share to each in their original subscriptions. That the Kendall and Gildersleeve herein mentioned are the same persons who are the incorporators of said corporation, and respectively cashier and assistant cashier of the First National Bank of Rock Springs, Wyoming. That there has never been an election of officers of the said corporation, but the said Revell has, by tacit consent, acted as general manager of said corporation.

That on March 8, A. D. 1898, said defendant purchased the chairs in controversy and the real estate on which said opera house building is situate, and in which is situated the chairs and other personal property from Kendall and Gildersleeve, and paid them therefor the sum of $8,000, of which $1,700 was in cash, the balance by assuming the payment of a note for $6,300, and the said Kendall and Gildersleeve, on the 26th day of February, 1898, signed a note in favor of the First National Bank for said sum of $6,300, the signature to said note being as follows: "The Grand Opera House Co." That said Kendall and Gildersleeve have

not yet executed or delivered a deed conveying said real estate and premises to the said corporation, but have delivered possession of said personal property, as stated before. That the said Kendall and Gildersleeve had actual notice of plaintiff's claim before the purchase of the property.

The action was replevin.    Judgment was rendered for defendants, and plaintiff prosecuted error.

*John H. Chiles,* for plaintiff in error.

There can be no question but that, as between the plaintiff and Edgar or Thorpe, et al., or Kendall and Gildersleeve, the plaintiff is entitled to recover in this cause, for the reservation of title in the plaintiff is valid.    (Warner v. Roth, 2 Wyo., 63; Bunce v. McMahon, 6 Wyo., 24; 42 Pac. Rep., 23.)    Since Section 2837, Revised Statutes of Wyoming, with reference to filing the contract with the County Clerk, enacted since these decisions, make the sale or contract void only as to *purchasers without notice.*    Kendall and Gildersleeve were promoters acting for and on behalf of the corporation.    The fact that they agreed to pay plaintiff's claim if they could not beat it; the fact that they borrowed money from the First National Bank and signed the name, The Grand Hotel Company, shows that the purchase of this property was made for the defendant company.    "When the contract is made in the name or in behalf of the projected corporation, and is treated as a proposal to such corporation to be acted upon by it when it comes into existence, then, in the absence of other controlling circumstances, acceptance of benefits under the contract justifies the inference that the corporation has accepted or adopted it."    (Alger on Promoters of Corp., Sec. 208.)

As a general rule, a corporation is not affected by the personal rights, obligations and transactions of the shareholders who form the corporation, *yet this rule cannot be applied blindly.*    A court of equity will look beyond the technical doctrine whenever this becomes necessary to do justice between the parties.

Notice to all the shareholders in a corporation should, under ordinary circumstances, be held binding upon the association in its corporate capacity.

If an association of persons owning property subject to equitable claims obtains an act of incorporation, the property will remain subject to these claims, after it is vested in the corporate name. (Allen v. Francis, 123 Cal., 474; r Morawetz on Corp., Sec. 229; Paxton Cattle Co. v. Bank, 21 Neb., 621; 59 Am., 852; R. R. Co. v. Christy, 79 Pa. St., 54; Moore Hdw. Co. v. Towers, 87 Ala., 206; 13 Am. St., 23; Low v. Railroad Co., 45 N. H., 370; Whitney v. Wyman, 101 U. S., 392; Beal v. Chase, 31 Mich., 490; McArthur v. Printing Co., 48 Minn., 319; 31 Am. St., 65; Simmons v. Doran, 142 U. S., 417; Schulte v. R. R. Co., 3 Woods, 692; Battelle v. Pavement Co., 37 Minn., 89; 33 N. W., 327; Leonard v. Loan Assn., 55 Ia., 594; 8 N. W., 463; Bridge Co. v. Rollins, 13 Colo., 4; 21 Pac., 877; Buffington v. Bardon, 80 Wis., 639; 50 N. W., 776; Morawetz Priv. Corp., Sec. 548; Note to Pittsburg Min. Co. v. Spooner, 17 Am. St., 161-168; Reichwald v. Commercial Co., 106 Ill., 439; Pratt v. Oshkosh Match Co., 89 Wis., 406; Davis v. Dexter Butter, &c, 52 Kan., 693; 35 Pac., 776.)

A corporation will be bound by contracts made on its behalf by its promoters before organization if, after it has organized, with full knowledge of all the facts, it assumes the contract and agrees to pay the consideration or accepts and retains the benefits. (Authorities cited above and 7 Thomp. Corp., Sec. 8283.)

If the corporation is organized for the purpose of evading obligations which have attached to the individual incorporators, courts of equity will hold the corporation to the performance of the obligation. (Hdw. Co. v. Towers, *supra*.)

An equitable title is not defeated by the fact that the holders of the legal title convey to a corporation of which they were promoters and organizers and are its directors and stockholders. In such case the company stands charged

with the same equities as existed against its grantors, and with the knowledge thereof which they possessed. (Franklin Min. Co. v. O'Brien, 22 Colo., 129; 43 Pac., 1016.)

When persons associate together to carry on a business contract debts in the course of the business, and afterwards convey the property of the association to a corporation formed by them to prosecute the business and in which they are the only shareholders, the corporation may be liable in equity for the payment of the debts. (Billings v. Aspen Min. & Smelt. Co., 51 Fed., 338; Paxton v. Bacon Mill Co., 2 Nev., 257; 2 Hermann on Estoppel & Res. Ad., Sec. 1185; Eagle Mfg. Co. v. Davenport (Ia.), 38 L. R. A., 481.)

Wherever a third party enters into a contract with the promoters of a corporation which is intended to inure to the benefit of the company, and the company take the benefit of the contract, they would be bound to perform it upon the familiar principle that one who adopts the benefits of an act which another volunteers to perform in his name and in his behalf is bound to take the burden with the benefit. (2 Cook on Corporations, 707; 1 Am. & Eng. Corp. Cas.; Cook on Stockholders, 2d Ed., 663b; Seymour v. Spring Forest, &c, 144 N. Y., 333; 26 L. R. A., 859.)

Another view may yet be taken of this case, we think. It is certainly clear that the corporation is only that of *de facto* and not a *de jure* organization. There was never any privity of contract between the corporation and the plaintiff, nor could there be, because there has never been any officers elected with which the plaintiff could do business or notify it that the plaintiff claimed a lien on the property in controversy.

It is true that some authorities go to the extent of holding that one who sues a corporation as such is estopped from afterwards denying its corporate capacity, but an examination of these authorities will disclose that they are cases where there was privity of contract or dealings directly with the corporation were had prior to the beginning of the action.

If there is no principle of estoppel that would govern the plaintiff in this case, then it is clear that it was entitled to a judgment againts Kendall, Gildersleeve and Revell, as the possession of the property was in the promoters and not in the corporation, as it had no legal entity.  (7 Thomp. Corp., Sec. 8213 and cases cited.)

Thus the words organize and organization mean the election of officers constituting the body complete for the transaction of its business.  (Boone on Corp., Sec. 34; Hanna v. International Co., 23 O. St., 622; R. R. Co. v. Chapman, 38 Conn., 56; Ryder v. Alton, &c, 13 Ill., 516.) A corporation without organization and members, and without officers and stockholders, is only a naked body.  (Aspen Water & Light Co. v. City, 5 Colo. App., 12; 37 Pac. Rep., 728; Arkansas River, &c, v. Farmers', &c, 13 Colo., 587; 22 Pac. Rep.. 954; Nehama v. Settle, 54 Kan., 424; 38 Pac. Rep., 483; Walton v. Oliver, 49 Kan., 107; 30 Pac. Rep., 172.)

It does not seem that this alleged corporation has complied with the law in perfecting its organization so that the law will permit it to escape the payment of an equitable title or claim on property in controversy.

Again, a corporation cannot hold property without organization and officers, as a corporation can only act through its officers.

Again, the only claim the defendant in error corporation can hope to have to this property is by virtue of the failure of plaintiff in error to file its contract, as prescribed by Section 2837, Revised Statutes of Wyoming, 1899. These statutes must be construed strictly, because in derogation of the common law.

By what rule of law or process of reasoning it can be said that the defendant in error corporation, a *de facto* organization, at most, that has never elected any officers, is a purchaser within the meaning of that statute, we are unable to ascertain.  It has not paid value, because it has issued no stock.

That an organization or association of persons without officers is not a corporate body has long since been settled. (Martin v. Deetz, 102 Cal., 55; 36 Pac. Rep., 368; 7 Thompson Corp., Secs. 8207-8209; *In re* Gibbs Est., 157 Pa. St., 59; 22 L. R. A., 276.)

And that a corporation can act only through its officers is an elementary proposition. How, then, can such a corporation be a purchaser within the meaning of that statute?

*D. A. Reavill,* for defendants in error.

The vital question in this cause is, Did the defendant in error, the Grand Hotel and Opera House Company, have, at or prior to its purchase from Kendall and Gildersleeve of the chairs in controversy, notice of plaintiff's lien? That a corporation can only receive notice through its officers or agents will scarcely be denied by anyone.

The record discloses the name of but one officer or agent of defendant corporation, and that was Walter H. Revell; neither does the record disclose the names of its trustees or the number of its trustees, nor its stockholders, nor the amount of stock issued. Except as to the names of the three persons who procured the incorporation of the company and that three shares of stock only had been *sold* the trial court obtained very little knowledge regarding this *duly* organized and existing corporation. Revell had no notice of plaintiff's claim. The knowledge of Kendall and Gildersleeve cannot be imputed to the corporation even were it shown that they were trustees of the corporation, for they were clearly acting adversely to it when they sold the chairs and other property to it at an advanced figure over what they gave for it. (4 Thomp. Corp., Secs. 5206-5207.)

The fact of the corporation assuming the payment of the note given by Kendall and Gildersleeve to First National Bank borrowed by them under firm name shows that the debt was the debt of, not the corporation, but of Kendall and Gildersleeve.

Since the record discloses absolutely that Revell had no knowledge of plaintiff's claim, we are at a loss to under-

stand why counsel cites so many authorities to show that where *all* the incorporators have notice, that notice binds the corporation, and we pass that proposition without further comment.

Counsel says no stock of the corporation had been issued with the exception of the three shares which were sold to Kendall, et al. He is evidently laboring under the impression that *sale* is the only means of disposing of stock, and that stock cannot be exchanged, pledged or bartered, etc.

In this court for the first time counsel contends that defendant was simply a *de facto*, and not a *de jure* corporation, and that it could not purchase, etc. His contention in the lower court was that it was a *duly* organized and existing corporation, and that it *purchased,* that he made demand upon it, that it refused to deliver up the chairs, etc. He had no trouble in getting it into court on process, and yet he could find none of its agents with whom to do business.

*John H. Chiles* and *Wells, Thompson & Chiles,* for plaintiff in error, on petition for rehearing.

There is no duty imposed upon the plaintiff in error to show that Kendall, Gildersleeve and Revell were trustees of this corporation, for the reason that the law expressly says that only certain persons can be trustees or directors of such corporation, and it certainly ought not to be presumed by this court that the law has been violated in that respect. The only thing necessary for this plaintiff to show in the trial of this case is, that there was a duty upon it to prove that it had a lien at some time prior to the institution of this suit upon this property. When the plaintiff in error proved that, the burden of proof then shifted upon the defendant in error company to prove, (1) that the plaintiff in error had not recorded this contract, and (2) that it was a *bona fide* purchaser, and this includes its corporate capacity to take and hold property. (Jones v. Aspen Hardware Co., 21 Colo., 263, 268.) The agreed statement of facts shows that Kendall, Gildersleeve and Revell were the incorpo-

rators of the company, and each subscribing for one share of its stock. And that no other stock had been sold to any other person. The law expressly says that no other person than a stockholder can be a trustee for the corporation. (R. S., Sec. 3035.)

And under such statutes it has frequently been held that to no other person than those having a personal, pecuniary interest in its success or failure can the management of corporations be committed. (Orr Water Ditch Co. v. Reno Water Co. (Nev.), 30 Pac., 695; Bank v. Caldwell (N. Y.), 30 N. E., 644; Wright v. Bank (N. J.), 28 Atl. Rep., 719.)

The defendant was not a corporation, even *de facto*. (1 Clark & Marshall's Corp., Secs. 82, 261; Green v. Dennis, 6 Conn., 293; Abbott v. Smelting & Ref. Co., 4 Neb., 416; Kilpatrick v. Church, 63 Ia., 372; De Witt v. Hastings, 40 N. Y. Sup. Ct., 463.)

Is there any act enumerated by the court that the defendants could not have done as individuals? That the company had money and paid it out for the Opera House Company, is no proof of corporate user, because any one or all of the individuals, acting separately or as a partnership, could have advanced the money and have done the same thing, which we think is unquestionably shown by the record, as the company had neither issued nor sold any of its stock.

The fact that Revell acted as general manager and superintendent is no proof of corporate user, the exact point being decided in one of the cases above cited, where the corporation had both a clerk and treasurer.

The fact that the corporation was and is in possession of the property is not proof of corporate user, because it is not alone a corporate act, as any or all of the defendant individuals may have also had possession of the property. (Wall v. Mines, 128 Cal., 136; Martin v. Deetz, 102 Cal., 55.)

The laws of this State provide that, after the filing of articles of incorporation, there shall be a corporate meeting,

officers elected, records and minutes kept, a seal adopted, and other acts which are prerequisite to becoming a corporation. These, and these only, are corporate acts, or what is known as corporate user; and will this court say that the burden of proof is upon us to show that these things have not been done, when there is absolutely no evidence in the record to sustain the finding of a trial court or to base it upon that this is a corporation by reason of corporate user?

And now, concerning the capacity in which Kendall, Gildersleeve and Revell hold this property, if they are not a corporation, and unquestionably they are not, then the law says they hold this property as a partnership. This follows as a matter of law, not a matter of fact. (See Cook on Stockholders, Secs. 233, 234; Abbott v. The Omaha Smelting & Ref. Co., 4 Neb., 416; Empire Mills v. Allston Grocery Co. (Tex.), 15 S. W., 505; Chaffee v. Ludeling, 27 La. Ann., 607; 1 Clark & Marsh Pr. Corp., Sec. 78, p. 220.)

It is elementary law that, under a statute of this character, one claiming to be a *bona fide* purchaser the burden is upon him to establish that fact by a preponderance of the evidence. (2 Warvelle on Vendors, Sec. 636; Blanchard v. Taylor, 12 Mich., 339; 86 Am. Dec., 57; Weaver v. Rothschild, 15 Ore., 385; 3 Am. St., 162; Deve v. Brandt, 53 N. Y., 462; Jewett v. Palmer, 7 John. Chan. (N. Y.), 360; 11 Am. Dec., 401.)

To constitute a *bona fide* purchaser certain tests are necessary—

1.  That it had no notice of outstanding title.

2.  That the purchase was upon valuable consideration.

3.  That the consideration was paid before it obtained notice. (R. S., Sec. 2837; Blanchard v. Taylor, 12 Mich., 339; 86 Am. Dec., 57; Jackson v. McChesney, 7 Cow., 360; 17 Am. Dec., 521; Leod v. The Bank, 42 Miss., 99; Tiedeman on Sales, Sec. 329.)

Another and fourth test proper in this case is that it must show its corporate capacity to take and hold property. "*As*

*a general rule, when a company relies upon its corporate capacity it assumes the burden of establishing it."* (Jones v. Aspen Hardware Co., 21 Colo., 263, 268; 1 Clark & Mars. Corp., Secs. 62-64.)·

The fact that this company had money and paid seventeen hundred dollars in cash, as part payment for the property, referred to by the court in its opinion, is no evidence that it parted with anything of value, for in truth and fact it was absolutely impossible for it to acquire this money under the law, because it had not issued any of its stock or sold any of it, nor had it been able to accept a gift; it had not changed its position nor parted with anything of value, and it is evident that the money came from one or two of the defendants in error, who bought with notice of this plaintiff's lien, because they were the only persons who had any interest in seeing this corporation formed.

Referring, now, to the statement that the record shows by stipulation that the defendant "was duly organized and incorporated." We beg to say, in this connection, that the record as a whole must be construed together, and not isolated portions taken out, upon which the facts of the case are predicated. The stipulation shows that the defendant company was "duly organized and incorporated." It also shows that "at all times herein mentioned there has never been an election of officers of defendant company." And "that, since said incorporation of the defendant company, . . . . no stock of said corporation has been sold to any person except Kendall, Gildersleeve and Revell, being one share each, as in their original subscriptions."

We submit that these affirmative statements, together with the negative proof in the record, are as much a part of the record proper as the statement to the effect that the corporation was "duly organized and existing," and must be construed together with this statement, and when taken together it will be found that they qualify the first statement, and the record should read in substance something like this: "That defendant company was duly organized

and incorporated, except that it had never elected any of-
ficers, issued or sold any of its stock (except one share
each to the incorporators), or exercised any other act of·
·corporate user, since the filing of the articles of··its in-
·corporation."

CORN, JUSTICE.

This was a.suit in replevin and arose out of the following
circumstances.: The plaintiff in error, who was also plain-
-tiff below, sold to· one H. H. Edgar a lot of chairs for his
opera house, under a written contract that the title was
not to pass to the purchaser, but was to remain in the plain-
'tiff until they were fully paid for, with the right to take
possession upon default in any of the payments agreed
upon.   Subsequently, Edgar sold the opera house property,
including the chairs, to Thorpe and others,· who agreed
to pay the claim of the plaintiff, amounting to $361.40.
Thorpe and his associates in turn sold the property, in-
cluding the chairs, to two of the defendants, Kendall and
Gildersleeve, who also had notice of the claim of plaintiff.
The defendants, Kendall and Gildersleeve and Revell, then
procured the incorporation of the defendant, the Grand
Hotel and Opera House Company, and the two former
sold and delivered to it the opera house property, includ-
ing the chairs.   The claim of plaintiff not being paid, it
made demand upon the defendant company for the chairs
and, upon its refusal to deliver them, brought this suit in
replevin to recover the possession.   The case was submit-
ted upon the pleadings, and agreed statement, as to a por-
tion of the facts, and certain depositions taken at the in-
stance of the plaintiff.·  The court found the right of prop-
erty and the right of possession in the defendant company
and gave judgment in favor of each of the defendants for
·costs.

Except as otherwise provided by statute, in sales of
,personal property, when by the terms of the contract of
sale the title does not pass until payment is made, and in

the meantime the property is to remain the property of the vendor, who, in case of default in payment, has the right to repossess himself of and remove it without legal process, the vendor may reclaim it, even though it be, in the hands of a third party, who takes it in good faith and without notice. (Warner v. Roth, 2 Wyo., 63; Bunce v. McMahon, 6 Wyo., 24.) But by Section 2837, Revised Statutes, enacted in 1895, it is provided that no sale, contract or lease wherein the transfer of title or ownership of personal property is made to depend upon any condition, shall be valid against any purchaser or judgment creditor of the vendee or lessee in possession, without notice, unless the same be in writing, signed by the vendee or lessee, and the original or a copy thereof filed in the office of the County Clerk of the county wherein the property is. The contract of sale was in writing in this case, but no attempt was made to comply with the statute by filing it with the County Clerk. The question of notice, therefore, becomes important.

It is claimed by counsel for plaintiff in error that Kendall and Gildersleeve were promoters, acting for and on behalf of the corporation; that the fact that they had notice of the plaintiff's claim and agreed to pay it if they could not defeat an action for its recovery, and the fact that they borrowed money from the First National Bank and signed the name of the Grand Hotel Company shows that the purchase of the opera house property was made for the defendant company. And they rely upon the principle that, as stated in Alger on Promoters of Corporations, Section 208, "When the contract is made in the name or in behalf of the projected corporation, and is treated as a proposal to such corporation to be acted upon by it when it comes into existence, then, in the absence of other controlling circumstances, acceptance of benefits under 'the contract justifies the inference that the corporation has accepted or adopted it." And authorities are also cited in support of the proposition that, if an association of persons owning

property subject to equitable claims obtains an act of incorporation, the property will remain subject to these claims after it is vested in the corporate name.

We are not disposed to dissent from these statements of the law, as applied to such cases, but it would seem that the court below did not find the facts upon which to base the conclusions insisted upon by counsel. The agreed statement is not entirely clear and the court made no special findings of facts. But it clearly appears that Kendall and Gildersleeve bought the property from Thorpe and others for seven thousand one hundred and seventy-five dollars on February 25th, 1898, paid for it and received possession, and it is admitted that this was its fair value. It is also agreed by the parties that the defendant, the Grand Hotel and Opera House Company, was incorporated on the 8th of March following, the defendants, Kendall, Gildersleeve and Revell, being the incorporators, and the capital stock was $25,000, divided into 500 shares of the par value of $50; that no stock was ever sold to any person except one share each to Kendall, Gildersleeve and Revell, their original subscription; there never was an election of officers, and it does not appear who were the trustees for the first year, named in the articles of incorporation. But it is stipulated that the defendant Revell "has, by tacit consent of said defendant, the Grand Hotel and Opera House Company, acted ·as its general manager and superintendent." It is then further stipulated in the agreed statement as follows: "That on March 8, 1898, said defendant, the Grand Hotel and Opera House Company, purchased said chairs in controversy and said real estate on which said opera house is situated and in which are situated the chairs and other personal property from said Augustine Kendall and A. M. Gildersleeve and paid them therefor the sum of eight thousand dollars in the manner following: $1,700 cash and by assuming the payment of a note for $6,300, which sum of money on the 26th day of February, A. D. 1898, said Kendall and Gildersleeve borrowed from the First National

Bank sixty-three hundred dollars to aid them in paying the purchase price of seven thousand one hundred seventy-five dollars for said premises, chairs in controversy and other personal property, signing a note in favor of said bank for said sum of sixty-three hundred dollars, the signature to said note being as follows: "The Grand Opera House Co.;" that the said Kendall and Gildersleeve have not yet executed or delivered a deed conveying said real estate and premises to the defendant, the Grand Hotel and Opera House Company, but have delivered possession of said personal property, as stated heretofore; said sum of $8,000 being a fair value of said property."

We find here no evidence tending to show that the purchase of the property was made for the defendant company. But, upon the contrary, it is expressly admitted and agreed that Kendall and Gildersleeve, themselves, purchased and paid for it; the corporation was not then in existence and no mention was made of it. Nor do we find any evidence tending to show that the contract of purchase was treated as a proposal to the corporation to be accepted by it when it came into existence, or that it accepted any benefits under the contract: But, upon the contrary, it is expressly admitted and agreed that it bought the property and paid for it its fair value, and seventeen hundred dollars of the purchase price was paid in money. It is true it seems to be urged that Kendall and Gildersleeve borrowed money by signing the name of the corporation to a note for $6,300, and that the money so obtained went as part payment upon the purchase from Thorpe and others. But the agreed statement does not bear out this claim. Upon the contrary, it appears that the money was borrowed by Kendall and Gildersleeve on February 26th, prior to the incorporation of the company, and paid over to Thorpe and others. The company, upon purchasing the property, assumed the payment of this amount to the bank, and it seems from the agreed statement that it did so by executing a new note to the bank, signed "The Grand Opera House Co." Who

signed the name of the company does not appear. But it
may perhaps be assumed to have been either Kendall, Gil-
dersleeve or Revell, as no other persons appear to have
exercised any authority in connection with its operations.
Indeed, so far as appears, neither Kendall or Gildersleeve
ever assumed to act in any way for the company. They,
together with Revell, acted as incorporators and, so far as
appears from the evidence, their connection with the com-
pany then ceased. No officers were elected and there is no
intimation that they were the trustees named in the articles
of incorporation. Revell was general manager and super-
intendent, but there is no proof whatever that he had notice
of the plaintiff's claim or any knowledge of it.

Under this state of facts, we do not think the court below
would have been justified in finding that the purchase of the
property by Kendall and Gildersleeve was made for the
defendant company; nor that it was the case of an asso-
ciation of persons obtaining an incorporation and trans-
ferring the title to their property to the corporation in ex-
change for the capital stock. But it is admitted that the
company paid for the property, seventeen hundred dollars
of the purchase price being paid in cash. And, while it
does not appear from what source this money came, there
is no intimation that it was furnished by Kendall or Gilder-
sleeve, or that they obtained it in any way for the company.

It is also insisted that, no officers ever having been elected,
the defendant company was a mere "naked body," without
capacity to hold property or do any other corporate act, and
that, therefore, the plaintiff was entitled to a judgment
against Kendall, Gildersleeve and Revell, the possession of
the property being in them as the promoters and not in
the corporation, which had no legal existence. But this
contention again is met by the agreed facts in the case,
for it is not only admitted that the company was duly or-
ganized and incorporated under the laws of this State; that
it had money and paid it out for the opera house property,
and that the defendant Revell acted as its general manager

and superintendent, indicating that it was conducting some part, at least, of the business for which it was organized, but it is also expressly admitted and stipulated that, at the institution of this suit, it was in the possession of the property in controversy. In the face of these admissions, we are unable to see how the plaintiff can claim a judgment against the personal defendants upon the theory that they and not the company were in possession of the property.

If it even appeared that Kendall and Gildersleeve were trustees of the defendant company, or that Revell, the general manager, had notice of plaintiff's claim, we should be disposed to hold, under all the other facts of the case, that there was notice to the company. But there is no proof whatever of either of these facts, and we see no escape from the conclusion that the defendant company was a purchaser without notice under the statute. The judgment will be affirmed.                              *Affirmed.*

POTTER, C. J., and KNIGHT, J., concur.

### ON PETITION FOR REHEARING.

CORN, CHIEF JUSTICE.

The court in its former opinion in this case intimated that, if it appeared that Kendall and Gildersleeve were trustees of the defendant company, we should be disposed to hold that there was notice to the company; but we reached the conclusion that there was no proof whatever that such was the fact. Counsel for plaintiff in error now strenuously insists, as the law provides that the trustees of a corporation shall be stockholders and the trustees for the first year shall be named in the articles of incorporation, that, therefore, as Kendall, Gildersleeve and Revell were the only stockholders, they must be presumed to have been the trustees named for the first year, and the court must act upon this as one of the established facts in the case in reaching its conclusion. The principle relied upon is stated to be that all persons are presumed to obey the law.

We think the contention of counsel is based upon a misconception of the principle involved. Unquestionably a condition found to exist, which presupposes the performance of other acts necessary to make such condition lawful, raises a presumption that such other acts were performed. So a man acting in a public office will be presumed to have been properly elected or appointed, entries found in public books will be presumed to have been made by the proper officer, if a person acts notoriously as cashier of a bank and is recognized by the directors as such, a regular appointment will be presumed and his acts will bind the bank, and the like. These things afford presumptions, from acts done, of what might have preceded them as matters of right and duty. (Bank v. Dandridge, 12 Wheat., 70.) The preceding acts are necessary in order to account legally and regularly for the existing condition, and, therefore, they are presumed.

But counsel in his argument carries the principle much further, and asks that we invert the process of reasoning and hold that, the antecedent acts being shown, we must presume the existence of the subsequent acts and conditions. This we do not understand to be the law, and counsel has not enlightened us by reference to any authorities sustaining it. Given the superstruction of a building and we may presume a foundation. But, upon proof merely of a foundation, it would be unsafe and illogical to indulge the presumption of a superstructure without other evidence of its existence. If it be admitted, therefore, that Kendall, Gildersleeve and Revell were stockholders, and the only stockholders, in the absence of all evidence that they were named in the articles as trustees, or ever acted as such, we think no presumption arises that they were trustees.

But there is another consideration which makes it clear that no such presumption ought to, or can, be indulged. At the time the articles were filed, they were not and could not be stockholders. At that time the corporation was not in existence, and it is quite manifest that stock cannot be

owned or held in a corporation which has itself no legal existence. As pointed out in a New York case, a construction of the statute which would require the trustees named in the articles to be stockholders before there is any legal organization must necessarily defeat the creation of any corporation under it. It is contrary to reason and the settled rules of construction to ascribe to a statute such a meaning as will nullify its operation if it is capable of any other interpretation. The language of the statute does not require such a construction and it will not be so construed. (Davidson v. Westchester Gaslight Co., 99 N. Y., 565.)

Counsel for plaintiff in error again insists that the defendant company was not a corporation or capable of taking or holding property; that it could not be a *bona fide* purchaser, or a purchaser at all, of the property in controversy, and cites authorities in support of the proposition that the defendant company, under the evidence, was not a corporation *de facto*. There is absolutely no question in this case involving the existence of the defendant company as a corporation *de facto*. The plaintiff in error, as plaintiff in the lower court, alleged in its petition "that at all times herein mentioned since March 7th, A. D. 1898, the above named defendant, the Grand Hotel and Opera House Company, were and are now a corporation duly organized and existing under and by virtue of the laws of the State of Wyoming." And in the agreed statement of facts it is stipulated that the defendant company was duly organized and incorporated under the laws of the State of Wyoming on March 8th, 1898; that, ever since its incorporation, the defendant Revell has been its general manager; that it purchased the property in controversy from Kendall and Gildersleeve and paid them eight thousand dollars therefor, and that this was its fair value; that they delivered possession of the property to the defendant company, and it was in possession at the time the suit was instituted. In view of these admissions that the defendant company was an existing corporation, any question of the sufficiency of the evidence

to show a corporation *de facto* is immaterial. And in the face of these admissions we are asked to say that the District Court erred in failing to find that the admissions were not true; that is to say, that in the face of the stipulation of the parties to the action that the defendant company was in possession of the property, the court should have found that it was not in possession; though it is stipulated that it bought the property and paid eight thousand dollars for it, the court should have found that the defendant company never purchased the property, never had any funds and never paid anything for it; and, though plaintiff avers in its petition that the defendant company was an existing corporation at all times mentioned in the action, and it is stipulated by the parties that it had a general manager, bought property and paid out money, we are asked to say that the District Court erred in failing to find that it had no existence and could not acquire or have possession of any property whatever. This we find ourselves unable to do.

Counsel for plaintiff in error further insists that the burden of proof was upon the defendant company to show that it had no notice of plaintiff's lien, and that there is no evidence, or insufficient evidence, that it had no notice. In the agreed statement of facts it is stipulated "that the only notice the defendant, the Grand Hotel and Opera House Company, had as a corporation that the plaintiff had or claimed a lien upon the property in controversy is such as is disclosed by the depositions of Chiles, Swanson and Chalice and the rest of the statement of fact, if such depositions and statements of fact disclose notice to defendant, the Grand Hotel and Opera House Company." There is but one possible construction of this stipulation, and that is, if the court shall find that notice is not disclosed by certain designated evidence, then it is agreed between the parties that there was no notice. The court has so found, and it, therefore, stands as a stipulation that there was no notice. We do not think counsel will contend that where the existence of a fact is stipulated any question can arise as to the

sufficiency of the evidence by which it is sought to be established.

The application for a rehearing is denied.

KNIGHT, J., and POTTER, J., concur.