[No. 26248.   En Banc.   March 12, 1937.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES SMITH, *Appellant*.[1]

*Henry Clay Agnew*, for appellant.

*H. W. Covalt* and *Frank W. Radley*, for respondent.

BEALS, J.—The defendant was charged by information with the crime of assault in the second degree, the information containing two counts, each of which

[1]Reported in 65 P. (2d) 1075.

charged the same crime as committed against a different person. At the trial, the prosecuting attorney was assisted by special counsel employed by the timber workers union. The jury returned a verdict of guilty of assault in the third degree as to each count, and from a judgment of guilty and sentence, defendant has appealed.

Error is assigned upon the refusal of the trial court to give an instruction requested by appellant; upon the ruling of the trial court sustaining an objection interposed by the state to questions propounded by appellant's counsel on the cross-examination of the state's witness; and upon the refusal of the trial court to grant a new trial.

The facts leading up to the occurence which resulted in appellant's arrest may be briefly stated as follows: Columbia Valley Lumber Company was operating a lumber business in the city of Bellingham, its workmen not being on strike. The timber workers union, during the month of June, 1935, for some reason picketed the plant by stationing a large number of men in the immediate vicinity, who, according to evidence contained in the record before us, were guilty of acts of violence and intimidation, both toward the company's employees and toward one witness who went to the plant to accomplish a small repair job. This man testified that he was an electrician, owning and operating his own business; that on June 11th he was called to the mill to repair a magneto; that outside the plant was a crowd of about two hundred pickets; that "they spit in my face and let the air out of the tires of my car."

Appellant and four other men arrived at the plant June 11th, in response to a request by the manager for men to act as private guards. The sheriff of the county having refused to deputize these guards, and the police

officers who were on duty outside the plant having, according to the testimony, stated that if more than two men, even though unarmed, attempted to leave the plant on a load of lumber, they would be arrested for inciting a riot, the manager decided that the guards should return to Seattle. The testimony indicates that, at this time, there were as many as two hundred so-called pickets outside the mill property.

After being at the plant only a few hours, appellant and his associates, in their own automobile, made a hurried exit from the mill. They testified that sticks and stones were thrown at their car, and that one of the windows thereof was broken by some missile.

One automobile containing several of the pickets, and a motorcycle ridden by two of them, undertook to follow appellant's car. The chase continued at considerable speed through the city of Bellingham. On one occasion, when the automobile tried to crowd his car into the curb, appellant displayed a firearm, which caused the automobile driven by the pickets to refrain from further physical interference with the course of appellant's car. The two men on the motorcycle testified that they saw appellant display the firearm.

After leaving the city, appellant's car was proceeding south along the Chuckanut drive, still followed by the motorcycle. Appellant, as he testified, fearing that while proceeding along this rather dangerous road the men following him on the motorcycle would shoot a hole in one of his tires and cause a bad wreck, stopped the car, and with his associates went back to the motorcycle, which had also stopped.

From the testimony of the driver of the motorcycle and the man riding with him, it appears that they were two of the pickets watching the mill, and that they left on the motorcycle to follow the automobile; that, in spite of the fact that appellant's automobile drove

through the city at a high rate of speed, the motorcycle persistently trailed the car, following it for a considerable distance after appellant had left the city proper. The driver testified that, when the automobile slowed down, the motorcycle slowed down; that on one occasion appellant's car went so fast that it was not visible from the motorcycle, which, however, continued the chase, and upon rounding a curve saw the automobile standing a short distance ahead.

The driver of the motorcycle testified that appellant and his associates came up to the motorcycle armed with guns and clubs, and that appellant asked what the motorcycle was following the car for, to which the driver of the motorcycle replied that he was not following the car. The driver of the motorcycle further testified that appellant struck him twice in the face, and also struck his associate, telling them to get back to town, which the two men forthwith proceeded to do. It further appears that, when the two men rejoined the picket line, a policeman told them to report the occurrence to the chief of police, which they did, with the result that appellant and his associates were arrested and brought back to Bellingham.

The witnesses for the defense told a slightly different story, but it is clear that appellant with his fists struck each of the men who had been riding the motorcycle. It is also clear that the motorcycle persistently followed the automobile at from ten to forty-five miles an hour, and continued to follow it for some distance after the car had left the main portion of the city and along a highway running through a very sparsely settled district leading to Seattle.

There is no doubt but that, on the day in question, a large number of men were gathered outside the lumber company's plant, for purposes hostile to the operation thereof; that the plant had been "picketed" for

some time prior to this date; and that acts of intimidation and actual violence had been committed, and that anyone who attempted to enter or leave the plant ran the risk, not only of insult, but of physical injury. It was evidently understood by the authorities that the situation was dangerous, as two police officers were stationed in the vicinity. One of these officers testified that he saw the pickets' car and motorcycle follow appellant's car as it left the mill, and that, after their return, he told the two motorcycle riders to report to the chief of police the fact that appellant had struck them.

When appellant's car left the mill, it could not be mistaken for a truck undertaking a delivery of lumber, but was evidently simply an automobile containing men who were anxious to leave the locality as rapidly as possible. Notwithstanding this, an automobile and a motorcycle undertook to follow the car and chased it through the city, the motorcycle continuing after the car had been distanced.

■ Appellant requested that the jury be instructed as to the statutory definition of the crime of riot, and told that any person who should be guilty of a riot or of participating therein or of aiding or abetting the same is guilty of a felony under the laws of the state of Washington. The majority of the court are of the opinion that appellant's assignment of error based upon the refusal of the trial court to instruct the jury concerning the statutory definition of the crime of riot is not well taken.

During the examination of appellant, in the absence of the jury and prior to the commencement of his cross-examination by the state's attorney, appellant's counsel addressed the court, stating in effect that appellant had at one time been a member of the United States Marine Corps, and that the method of his severance from the service was by means other than an honor-

able discharge. Counsel stated that he believed that the prosecution intended to cross-examine appellant upon this phase of his past life, and that such cross-examination was, in counsel's opinion, wholly improper, and, if followed by counsel for respondent, would entitle appellant to a mistrial. Counsel thereupon moved that the court direct counsel for respondent that, if they intended to propound any questions upon the subject referred to, they should make the offer of proof in the absence of the jury, and that a ruling of the court upon the matter of the propriety of the cross-examination be then obtained.

The court, after argument, ruled that the position of appellant's counsel was well taken, whereupon the jury was called in, and the cross-examination of appellant proceeded, being conducted by one of the special prosecutors. After a number of other questions, appellant stated, in response to a question, that he had served in the United States Marine Corps. He was then asked: "What was the occasion of your leaving the Marine Corps," to which he replied: " I deserted." No objection was made to the question, nor was any motion interposed that the jury be instructed to disregard the answer or that the same be stricken. In support of his motion for new trial, appellant argues that the special prosecuting attorney, in propounding the question above quoted, was guilty of misconduct which entitles appellant to a new trial.

■ Appellant's motion for a new trial is before us, being contained in a supplemental transcript, and the certificate of the trial court attached to the bill of exceptions shows that appellant assigned error upon the court's failure to grant a new trial because of the misconduct of the prosecuting attorney during the cross-examination of appellant Smith. The bill of exceptions also contains the oral decision of the trial court deny-

ing appellant's motion for a new trial, in which the error under discussion is fully discussed. Upon the record, appellant is entitled to urge this assignment of error.

■ Appellant seasonably and in an entirely proper manner, in the absence of the jury, called the court's attention to the fact that appellant left the Marine Corps under circumstances discreditable to him, and asked that, if counsel for the state proposed to cross-examine appellant upon this matter, the legal question presented by any such interrogation be first presented to the court in the absence of the jury, and the ruling of the court obtained thereon. Assuming for the purpose of argument that the trial court was not obliged to thrash out any such matter before any question was actually propounded to the witness, the court in the case at bar entertained the motion and listened to argument thereon from counsel for the respective parties. Thereafter, the court ruled that appellant's position was correct, and, notwithstanding this ruling, counsel representing the state on cross-examination propounded the objectionable question. In passing upon the motion for new trial, the court stated that, in its opinion, the action of the special prosecuting attorney was erroneous, but held that, notwithstanding such action, appellant was not entitled to a new trial.

In this ruling, the trial court erred. Under appellant's motion, counsel for the state was accorded an opportunity to present to the court any argument which he desired to make to the effect that cross-examination upon the subject under discussion should be admitted. In propounding the question, counsel clearly violated the ruling of the court theretofore made. The question was highly prejudicial and of such a nature that the prejudice largely consists in the mere asking of the question.

The fact that the question was not objected to is not controlling. It may well be that an objection to such a question, even though sustained, is more damaging to a defendant's case than almost any answer could be. Neither, under the circumstances shown by this record, was a motion to strike the answer and instruct the jury to disregard the same necessary. In any event, in view of the deliberate disregard by counsel of the court's ruling, prejudice must be presumed, and appellant's motion for a new trial should have been granted.

In this connection, the opinion of this court in the case of *State v. Tweedy,* 165 Wash. 281, 5 P. (2d) 335, is in point. In the case cited, a judgment of guilty was reversed and a new trial ordered, because the prosecuting attorney had, as the court said, "finally succeeded in introducing testimony which the court on three prior occasions ruled was incompetent and inadmissible." The error was held prejudicial, even though the objectionable testimony was, on motion, stricken by the court and the jury instructed to disregard it. In this connection, the cases of *State v. Heaton,* 149 Wash. 452, 271 Pac. 89, and *State v. Navone,* 186 Wash. 532, 58 P. (2d) 1208, are also in point.

■ Finally, appellant complains of a ruling of the trial court sustaining an objection interposed by counsel representing the state to a question directed to one of respondent's witnesses, who stated that he was a member of the timber workers union. On cross-examination, the witness was asked how much the union had paid to the special prosecutors who were assisting the prosecuting attorney.

It was admitted at the outset of the case that these gentlemen had been retained by the timber workers union. The court has a wide latitude in determining the scope of cross-examination. In sustaining the ob-

jection to the question asked, we find no error which would entitle appellant to a reversal of the judgment appealed from.

For the error above noted, the judgment appealed from is reversed, and the case remanded for a new trial.

MAIN, MILLARD, and ROBINSON, JJ., concur.

STEINERT, C. J., concurs in the result.

HOLCOMB, J. (dissenting)—Appellant was convicted only of a misdemeanor, third degree assault. Of this, he was undoubtedly guilty under his own testimony. The decision by the majority is another miscarriage of justice in this state, wholly unjustified by the facts or the law.

The majority disregard the fact that, at the time counsel for appellant shrewdly moved to get the trial court to erroneously prejudge the manner of leaving the Marine Corps by appellant, the special prosecutor warned the court and opposing counsel that he would not be bound by that ruling, but if counsel examined appellant as to his previous life, the special prosecutor would cross-examine along the same lines. This, the prosecution doubtless had a right to do and was not to be bound by the prejudgment of the trial judge, not knowing what course the direct examination would take or about what the prosecution would be legally entitled to cross-examine.

Counsel for appellant certainly knew of the previous career of appellant. His able strategy was to get the prosecution and the court bound in advance on the matter so that no such questions would be asked. On cross-examination appellant testified that he had been a Canadian Mounted policeman, a special deputy sheriff in King county, Washington, had served in the United States Marine Corps, and had been an inmate of a peni-

tentiary. The special prosecutor merely asked him what was the occasion of his leaving the Marine Corps. Although he himself knew it was coming, before any objection was made by his counsel he answered, ''I deserted.''

Had counsel for appellant intended to follow up his objection made before the examination, he should have immediately objected to appellant's answering the question before he answered it; or, if appellant answered too quickly, he should have moved to strike the question and answer. Either the objection would have been sustained or the motion to strike granted, as the trial court had previously intimated. Neither was done. That being the state of the record, no error resulted to the prejudice of appellant. That is the effect of our holdings in *State v. Humphreys,* 118 Wash. 472, 203 Pac. 965, and *State v. Brames,* 154 Wash. 304, 282 Pac. 48.

The cases cited by the majority, *State v. Heaton,* 149 Wash. 452, 271 Pac. 89; *State v. Tweedy,* 165 Wash. 281, 5 P. (2d) 335; and *State v. Navone,* 186 Wash. 532, 58 P. (2d) 1208, are not in point, but are wholly inapt. In the *Tweedy* case, the prosecuting attorney persisted, as this court said, in repeatedly questioning, and finally, after three adverse rulings by the trial court, in getting testimony before the jury that was certainly incompetent and inadmissible.

That certainly is not true here. The only testimony that was admitted before the jury on the matter in question was probably admissible under the direct examination of appellant. It was certainly as much so as in *State v. Zerfass,* 175 Wash. 420, 27 P. (2d) 708, where a man was on trial for his life, for murder of his wife, and this court, per Main, J., held that it was not error for the trial court to permit the cross-examination and require appellant to answer relative to his re-

432

lation to another woman who accompanied him to Portland. The court said:

"The appellant having testified that his reason had been dethroned because of the admission of his wife, if she did make such admission, just prior to the shooting, the question of his own misconduct was not a wholly unrelated matter as bearing upon the question of the effect of his wife's admission upon his mental state. The trial court did not err in permitting the cross-examination complained of."

Other cases from this court were there distinguished; among others, *State v. Shaw*, 75 Wash. 326, 135 Pac. 20, which had been relied upon by appellant, where, as pointed out in the last opinion, the defendant had not put his character in issue and it was held that it was prejudicial error to receive in evidence as a part of the cross-examination a certificate of his dishonorable discharge from the United States Navy tending to show that the accused had a bad character. But there, the certificate was independent testimony and not something which had come from the lips of the accused as affecting his credibility.

Appellant was convicted of a minor offense and the judgment should be affirmed. I therefore dissent.

BLAKE and GERAGHTY, JJ., concur with HOLCOMB, J.

TOLMAN, J. (dissenting)—Judge Holcomb in his dissent has aptly and wisely pointed out, "Appellant was convicted only of a misdemeanor, third degree assault. Of this he was undoubtedly guilty under his own testimony."

In this, I heartily agree, and where it appears, as here, that the convicted person is complaining of a conviction justified by his own testimony, it seems to me that no ordinary error which may be disclosed by the record would warrant this court in disturbing the conviction.

The only possible error which I see in the case is that which is denominated "misconduct of counsel." Assuming that the prosecutor was guilty of misconduct, still, under this record, the appellant is entitled to no relief.

No court should, or could logically, reverse a conviction based upon the accused's own testimony simply because there may have been misconduct on the part of the prosecutor. Under such circumstances, we must assume that the jury followed the testimony of the accused which established his guilt, and therefore he could not have been prejudiced by the misconduct.

I also dissent.