**Mike Leanard HAYES, Appellant (Defendant below),**

v.

**The STATE of Wyoming, Appellee (Plaintiff below).**

**No. 5062.**

Supreme Court of Wyoming.

Aug. 16, 1979.

Rehearing Denied Sept. 5, 1979.

Gerald M. Gallvin, Director, Wyo. Defender Aid Program (argued), Laramie, Frank R. Chapman, Public Defender, Casper, and Kurt Kelly, Student Intern, Laramie, appeared on brief for appellant.

Gay V. Bartels, Asst. Atty. Gen. (argued), John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., appeared on brief for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Appellant-defendant here appeals from his conviction on three counts of first degree murder for which he was sentenced to three consecutive life terms. He alleges error in connection with the testimony of a psychiatrist, Dr. Spencer Anneberg, relative to his mental responsibility at the time of commission of the crime. Specifically, he contends that Dr. Anneberg's testimony was inadmissible under § 7–11–305, W.S. 1977; that it was admitted in violation of an Order in Limine; and that such was reversible error inasmuch as the evidence was insufficient to submit the case to the jury without such testimony. Appellant's Motions for Mistrial, for New Trial, for Judgment of Acquittal, and for Judgment Notwithstanding the Verdict were denied. We affirm.

Although appellant pleaded "not guilty, not guilty by reason of mental illness or deficiency and not triable by reason of mental illness or deficiency," appellant did not attempt, at the trial, to controvert the fact that he killed the three individuals as alleged in the three-count information, and the only issues on appeal are those which concern his plea of not guilty by reason of mental illness or deficiency at the time of the crime.

After appellant entered the aforesaid plea, the court ordered the Wyoming State Hospital to observe, examine and report on his mental and physical condition pursuant to § 7–11–303, W.S.1977. In a report dated June 2, 1978, Dr. Bancroft M. Brooks of that hospital reported that appellant was

legally competent to stand trial, but that he was suffering from schizophrenia, paranoid type, and lacked substantial capacity to appreciate the wrongfulness of his conduct and was unable to conform his conduct to the requirements of law at the time of the crime. On June 12, 1978 (more than five days after receipt of the report), appellant requested an order for examination of him by a designated examiner of his own choosing. On August 1, 1978, the order was made, and Dr. Bernice B. Elkin, a psychiatrist at Casper, was chosen for the examination. She reported her findings and conclusions on August 23, 1978. In her report, she advised that appellant was suffering from manic-depressive disorder or bipolar depression. Her conclusions were substantially the same as Dr. Brooks' with reference to competency to stand trial and with reference to his lack of capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of law at the time of the crime.

On August 16, 1978, the Sheriff of Uinta County advised that he was unable to serve a subpoena on Dr. Brooks and that his whereabouts were unknown. On August 22, 1978, the County and Prosecuting Attorney filed a motion for an order appointing Dr. Spencer Anneberg, a psychiatrist at Sheridan, as a designated examiner of the state's choosing, alleging in his motion that the examiner from the Wyoming State Hospital, who had previously examined appellant, had "been dismissed for substandard professional work." The motion was granted and the order made on August 22, 1978. After making the examination, Dr. Anneberg telephonically advised appellant's counsel on August 23, 1978, that he concluded that the accused did not have mental illness or deficiency at the time of the crime, and that he would so testify.

The trial was scheduled for, and held on, August 24, 1978. On August 24, 1978, appellant filed a Motion in Limine. It was argued just prior to the beginning of the trial. In the motion, appellant requested that the testimony of Dr. Anneberg be limited. Appellant argued that the request for the appointment of Dr. Anneberg was not made within the five days after receipt of the copy of the Wyoming State Hospital report as required by § 7–11–303(d); that Dr. Anneberg did not submit a written report of his examination pursuant to § 7–11–303(d); and that Dr. Anneberg was therefore not a competent witness. Appellant also argued that the testimony of Dr. Anneberg was excludable under Rule 403, W.R.E.[1] Appellant conceded that it was proper for Dr. Anneberg to testify as an expert witness pursuant to § 7–11–305(d), i. e., as one who did not examine the appellant, but who could testify as to the validity of the procedures and scientific propositions of those who did examine him. The court granted the Motion in Limine.

Additional facts of the case will be set forth as required under the discussions of appellant's allegations of error.

## ADMISSIBILITY OF DR. ANNEBERG'S TESTIMONY UNDER § 7–11–305, W.S.1977

Appellant contends that the provisions of § 7–11–305 prevented receipt into evidence of the following testimony of Dr. Anneberg:

"Q. Now, Dr. Anneberg, did you have an opportunity and occasion to examine the defendant, Mike Hayes?

"A. Yes, I did.

"Q. And when did that occur?

"A. That occurred in the afternoon of the 20th [sic] of August.

"Q. Was that at my request?

"A. Yes, it was.

"Q. Now, Dr. Anneberg, you have heard testimony from both Dr. Elkin and Dr. Burnett with regard to this case. Do you recall that?

"A. Yes.

"Q. And they came to certain conclusions in this case, do you recall those?

---

1. Rule 403, W.R.E. provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

"A. Yes, I do.

"Q. And do you agree with those conclusions?

"A. I agree with some of their conclusions and disagree with others.

"Q. Do you agree that the defendant lacked the substantial ability to conform his conduct to the requirements of law?

"A. I disagree with that."

Since the determination of this issue involves the application of the 1975 legislative enactment [2] relative to the plea of insanity (§§ 7–11–301 through 7–11–306, W.S.1977), an analysis of it is in order.

Sections 7–11–301, 7–11–302, and 7–11–306 are not material to our determination. Section 7–11–301 defines "facility," "designated examiner" and "mental deficiency." Section 7–11–302 also has a definition posture. It provides:

"(a) No person shall be tried, sentenced or punished for the commission of an offense while, as a result of mental illness or deficiency, he lacks the capacity, to:

"(i) Comprehend his position;

"(ii) Understand the nature and object of the proceedings against him;

"(iii) Conduct his defense in a rational manner; and

"(iv) Cooperate with his counsel to the end that any available defense may be interposed."

Section 7–11–306 concerns the disposition to be made of a person found *not guilty* by reason of mental illness or deficiency excluding responsibility at the time of the crime.

The remaining three sections concern, respectively, the three situations with which the court must proceed in this area: (1) the situation in which the mental illness or deficiency exists at the time of the trial to the extent that the accused is unfit to proceed

with it (§ 7–11–303); (2) the situation in which the mental illness or deficiency of the accused exists at the time of the crime to the extent that it excludes responsibility of the accused for the crime, and the accused entered a plea of "not guilty by reason of mental illness or deficiency" (§ 7–11–304); and (3) the same situation as the second one except the accused entered a plea of "not guilty and not guilty by reason of mental illness or deficiency" (§ 7–11–305).

In this case, appellant entered a plea of "not guilty, not guilty by reason of mental illness or deficiency, and not triable by reason of mental illness or deficiency." It appears that at least some of the problem here presented results from a misunderstanding of the proper application of §§ 7–11–303, 7–11–304, and 7–11–305 to the situations presented by appellant's pleas.

■ The situation with reference to appellant's contention that his mental illness or deficiency existed at the time of the trial to the extent that he was unfit to proceed with it is governed by § 7–11–303. When reasonable cause exists to so believe, that section directs the court to order an examination of the accused by a designated examiner, who must file a written report of his examination [3] with the clerk of court. The clerk delivers copies of the report to the prosecuting attorney and to the accused or his counsel. Within five days thereafter, both the state and the accused may make a written request for an examination by a designated examiner of their own choosing. Such examiner must furnish a copy of the report of his examination to the court and opposing counsel. The court then makes a determination and finding on the issue of fitness to proceed (after a hearing if there is a contest to the examination made by the first designated examiner, or if the court

---

**2.** Section 7–11–305(a) was amended in 1978.

**3.** Section 7–11–303(c) directs the inclusion of six things in the report including, among other opinions, an opinion as to whether or not at the time of the crime the accused lacked substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law as a result of mental ill-

ness or deficiency. This direction was obviously included in this section by the legislature so that reference could be made in § 7–11–304 to the use of the report in the situation wherein the concern was for mental illness or deficiency excluding responsibility at the time of the crime.

orders a hearing even if there is no contest).[4] If the accused is found by the court not to be fit to proceed due to present mental illness or deficiency, provision is made for hospitalization of him. If the court finds that the accused is fit to proceed, the regular trial procedure continues. The accused may nonetheless present a defense of mental illness or deficiency excluding responsibility at the time of the crime.

Thus, the determination as to whether or not the accused is unfit to proceed due to mental illness or deficiency at the time of trial is a court determination, not a jury determination. It is not in the nature of a defense to the charge. It is a threshold issue, necessary to be resolved to prevent a violation of due process through conviction of a person incompetent to stand trial. *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956); *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Wolcott v. United States*, 10th Cir., 407 F.2d 1149, cert. den. 396 U.S. 879, 90 S.Ct. 156, 24 L.Ed.2d 137 (1969); *U. S. v. Bettenhausen*, 10th Cir., 499 F.2d 1223 (1974); § 7–11–302, W.S.1977, supra.

■ The record in this case does not contain a specific order in which the court made the determination relative to competency to stand trial. However, the reports and testimony of all of the designated examiners were to the effect that appellant was not unfit to proceed with the trial due to present mental illness or deficiency, and there is no record basis upon which the court could rule for appellant on the issue of mental illness or deficiency at the time of trial. However, the court did rule against appellant on his several motions which were premised on mental illness or

deficiency both at the time of trial and at the time of the crime. Appellant is not alleging error in this respect on his appeal, and this situation as it applies to this case is mentioned only because the procedure for it is improperly intertwined by appellant with the procedure for the situation involving mental illness or deficiency excluding responsibility at the time of the crime.

■ The situation to which § 7–11–304 applies, i. e., the one in which the accused enters a plea of "not guilty by reason of mental illness or deficiency" is not material to this case inasmuch as appellant added to that plea the plea of "not guilty," thus placing himself under the situation controlled by § 7–11–305.

Section 7–11–305 provides:

"(a) When a defendant couples a plea of not guilty with a plea of not guilty by reason of mental illness or deficiency, proof shall be submitted before the same jury in a continuous trial on whether the defendant in fact committed the acts charged, on the remaining elements of the alleged criminal offense and on the issue of mental responsibility of the defendant. In addition to other forms of verdict submitted to the jury, the court shall submit a verdict by which the jury may find the defendant not guilty by reason of mental illness or deficiency excluding responsibility. [W.S.1977, 1979 Cum.Supp.][5]

"(b) The prosecution shall prove beyond a reasonable doubt all the elements of the offense charged and the mental responsibility of the defendant. However, every defendant is presumed to be mentally responsible and the burden of first going forward and entering evidence on the issue of mental responsibility is upon the defendant.

---

4. Even at this hearing the contesting party may offer evidence in addition to that of the designated examiners. Section 7–11–303(f) provides in part:

"* * * The party contesting any opinion relative to fitness to proceed has the right to summon and cross-examine the persons who rendered the opinion *and to offer evidence upon the issue.*" (Emphasis supplied.)

5. The original subsection (a) to § 7–11–305 was held unconstitutional by this court in *Sanchez v. State*, Wyo., 567 P.2d 270 (1977). The original subsection provided for a bifurcated trial in which the evidence was first heard on whether or not the accused committed the acts charged in the criminal offense. If by a special verdict the jury found that he did, evidence was to be heard on the remaining elements of the offense and on the issue of mental responsibility.

"(c) The designated examiners who examined the defendant pursuant to W.S. 7–242.3 [§ 7–11–303] or 7–242.4 [§ 7–11–304] are competent witnesses.

"(d) In addition, the state and the defendant may summon other expert witnesses who did not examine the defendant. Such experts are not competent to testify as to the mental responsibility of the defendant; however, they may testify as to the validity of the procedures followed and the general scientific propositions stated by other witnesses.

"(e) Those examiners who examined the defendant may testify as to the nature of their examinations, diagnoses of mental illness or deficiency, and opinions as to the defendant's ability to appreciate the wrongfulness of his conduct, or to conform his conduct to the requirements of law. They may also reasonably explain their diagnoses and opinions, and may be cross-examined as to their competence and the credibility of their diagnoses and opinions."

Appellant would read into this section a procedure whereby only the designated examiners could give a diagnosis of the accused's condition and only they could give an opinion as to his ability to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. Any other expert could only "testify as to the validity of the procedures followed and the general scientific propositions stated by other witnesses." Appellant so argued in support of his Motion in Limine.

■ But the section does not say that. It is plain and unambiguous in saying that the designated examiners are competent witnesses (subsection (c)); that those examiners who examined the accused are also competent witnesses (subsection (e)); and that other expert witnesses *who have not examined the accused* may "testify as to the validity of the procedures followed and the general scientific propositions stated by other witnesses" (subsection (d)). Where the language of a statute is plain and unambiguous, there is no room for construction, and the court may not look for and impose another meaning. *Sanchez v. State*, supra footnote 5; *Wyoming State Treasurer v. City of Casper*, Wyo., 551 P.2d 687 (1976); *Mountain Fuel Supply Company v. Emerson*, Wyo., 578 P.2d 1351 (1978).[6]

■ Dr. Anneberg did examine appellant. Therefore, his testimony was not limited only to that proper for an expert who did not examine appellant (subsection (d)). There is no requirement in § 7–11–305 for the furnishing of a report of the result of the examinations conducted by the various experts except insofar as testimony may be presented by those who were also appointed designated examiners under the two previous sections and who, therefore, submitted the reports required by such previous sections. Likewise, there is no requirement in § 7–11–305 for appointment or approval of intended expert witnesses within five days of receipt of the report required by § 7–11–303. The prosecuting attorney obviously attempted to obtain such appointment or approval for Dr. Anneberg, albeit after the five day period, and Dr. Anneberg was appointed; but this procedure was unnecessary and futile under the plain provisions of § 7–11–305(e) which allows testimony by

**6.** Even if there were ambiguity which would require us to ascertain legislative intent, the result would be the same in this instance since statutes are not to be given a meaning to nullify their operation if they are capable of any other interpretation. *Grand Rapids Furniture Co. v. Grand Hotel & Opera House Co.*, 11 Wyo. 128, 70 P. 838 (1902), reh. den. 11 Wyo. 128, 148, 72 P. 687 (1903); *DeHerrera v. Herrera*, Wyo., 565 P.2d 479 (1977). To accept appellant's contention that the statute arbitrarily limited the number of witnesses permitted to give expert testimony on the main and controlling fact of this case would bring into contention its propriety in the interest of a fair trial and due process and also question the inherent power of the court with reference to limitation of the number of witnesses—thus invalidating the act. Annotation, 5 A.L.R.3d 238. See Rules 703 and 706(d), W.R.E. Note authority of the court to limit number of expert witnesses per Rule 16, W.R.C.P. which authority has no counterpart in W.R.Cr.P. The precedent created by accepting appellant's contention would likely work a greater hardship on future defendants in criminal actions than on the prosecution.

any examiner who examined the accused.[7] It appears that an improper effort to read the provisions of §§ 7–11–303 and 7–11–304 into § 7–11–305 not only resulted in confusion at the trial, but also in the contention of appellant in this appeal.[8]

■ Accordingly, it was entirely proper for Dr. Anneberg to have given his diagnosis of appellant's mental condition and to have given his opinion relative to his capacity to appreciate the wrongfulness of his conduct and his ability to conform his conduct to the requirements of law at the time of the crime. He had examined appellant, and his testimony was founded on such examination. One of the essential elements to be passed on by the jury in the determination of appellant's guilt was the sanity of appellant at the time of the crime. It was an integral part of the determination of guilt, *Sanchez v. State*, supra footnote 5. Dr. Anneberg's testimony was directed to this integral element.

## ADMISSIBILITY OF DR. ANNEBERG'S TESTIMONY UNDER ORDER IN LIMINE

■ The Order in Limine was founded on the premise that Dr. Anneberg's testimony was inadmissible under § 7–11–305. Since we have determined that this premise was faulty, the Order in Limine was improper; and a violation of it was not prejudicial error. Furthermore, the record reflects that the court modified or rescinded the Order and accepted the testimony.

■ A motion in limine, a motion to suppress or a motion to exclude call for a pretrial determination that certain potential evidentiary matters or items are inadmissible at the trial. Such motions and the rulings thereon are proper. Recognition exists in rules of the court, such as Rule 16,

W.R.C.P. relative to pretrial conferences; Rule 403, W.R.E. relative to balancing of probative value against other dangers and considerations [9]; and Rule 40(e), W.R.Cr.P. relative to suppression of evidence obtained through unlawful search and seizure. Rule 16, W.R.Cr.P. specifically provides that "[a]ny defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion." But even without specific rule authorization, a court has authority to entertain and act on such motions by virtue of its inherent power and duty to assure a fair and impartial trial and to admit only proper evidence and to exclude improper evidence. This same authority permits the modification or rescission of the orders relative thereto, and for the same reasons. In other words, such motions and orders made prior to trial should be subject to the same considerations and results as those made during the trial. See 63 A.L.R.3d 311; 22 A.L.R.2d 599; *Frontier Fibreglass Industries, Inc. v. City of Cheyenne*, Wyo., 435 P.2d 456 (1967); *Nichols v. Pangarova*, Wyo., 443 P.2d 756 (1968).

■ In this case, the jury received only proper evidence, and appellant's counsel was aware of the nature of the testimony of Dr. Anneberg which was to be presented—albeit being advised thereof only a day before trial. The evidence was not extensive and was in the same area and general nature as that presented by appellant's witnesses, only with a contrary opinion. In ruling against appellant on his Motions for Mistrial, for Judgment of Acquittal and for Judgment Notwithstanding the Verdict, and in allowing Dr. Anneberg's testimony to stand, the court either modified or rescinded the Order in Limine or ruled that the testimony was not violative

---

7. Error is not alleged with reference to the requirements of §§ 7–6–102 and 7–6–103, W.S. 1977, relative to endorsement of witnesses on the information and waiver of objection for failure to do so, and there is nothing concerning such in the record.

8. Although the enactment is plain and understandable, its language, references and section arrangement are not as smooth and readable as might be inasmuch as the same were originally designed to apply to the bifurcated trial provision which was subsequently removed from § 7–11–305(a) by amendment.

9. See footnote 1.

of the Order in Limine. We do not find the clear abuse of discretion which appellant has the burden of demonstrating to this court before we can disturb a trial court's ruling on the admissibility of evidence. *Boggs v. State*, Wyo., 589 P.2d 839 (1979). We do not find unfair prejudice. The testimony was relevant to the central issue of the case. It was not excludable under Rule 403, W.R.E. It was admissible. It was properly received.

### SUFFICIENCY OF THE EVIDENCE

Since appellant contends that the evidence was insufficient only without the testimony of Dr. Anneberg, and since Dr. Anneberg's testimony was proper and subject to consideration by the jury, further exposition on the sufficiency of the evidence is not necessary. We will note that four lay witnesses testified to their observations of appellant immediately prior to, at the time of, and immediately after, the killings. Their testimony included such language as he "seemed like Mike Hayes"; he was "not acting wildly"; he was "not upset" before the shooting; he was "all right"; he was "not irrational"; "he wanted to go see a movie"; "he said he didn't want to use it [the gun], but he would if he had to"; prior to the killings he was "kind of nervous, kind of upset, but he was calming down a little bit"; after the killings, he "understood the situation and the circumstances he was in" and "he knew who everybody was, who he was talking to" and "his answers were responsive to the questions I placed to him."

The evidence of these lay witnesses coupled with that of Dr. Anneberg, supra, was sufficient under the rule by which we test the sufficiency of evidence on appeal in a criminal matter, i. e., we examine and accept as true the evidence of the prosecution, leaving out of consideration entirely the evidence of the defendant in conflict therewith, and we give to the evidence of the prosecution every favorable inference which may reasonably and fairly be drawn therefrom. Stated another way—it is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the state. *Evanson v. State*, Wyo., 546 P.2d 412 (1976); *Brown v. State*, Wyo., 581 P.2d 189 (1978); *Nisonger v. State*, Wyo., 581 P.2d 1094 (1978).

Affirmed.

ROSE, Justice, dissenting, with whom McCLINTOCK, Justice, joins.

I am of the opinion that, because of the way the motion-in-limine matter was handled, the defendant was deprived of an opportunity to effectively cross-examine the witness, Anneberg, resulting in a denial of due process of law as guaranteed by the Sixth Amendment to the United States Constitution, and Article 1, Section 5, of the Wyoming Constitution. The lack of opportunity came about through no fault of defense counsel. In this case, an order of the court was extant which limited Dr. Anneberg's testimony to that allowable under § 7–11–305(d), W.S.1977, which provides:

". . . Such experts are not competent to testify as to the mental responsibility of the defendant; however, they may testify as to the validity of the procedures followed and the general scientific propositions stated by other witnesses."

For purposes of this dissent, I will assume, arguendo, that the limine order was not properly entered in the first instance because Anneberg was an examining doctor and was, therefore, "competent." Nevertheless, because of the order, defense counsel had a right to assume that the doctor would not be permitted to testify on the ultimate issue having to do with the mental responsibility of the defendant.

The prosecutor called Dr. Anneberg to the stand and, contrary to the restriction placed upon him by the court, asked if he agreed (with the defendant's doctors) that

*the defendant lacked the substantial ability to conform his conduct to the requirement of the law,*

to which Dr. Anneberg responded,

"I disagree with that."

This—in my judgment—was the answer to the ultimate question which the prosecutor had been directed not to ask. That is—his limitations under the order of the court prevented him from asking it. In the hearing on defendant's motion to strike Anneberg's questioned testimony and the motion for new trial, the judge agreed that this question and its consequent answer were prohibited by the limine order, but held the testimony not to be prejudicial.

To any concern that I have here, it is irrelevant that the order may have been improperly entered in the first place. It was an order of the court under which the case was being tried and all parties were bound by it. Not only were they bound by it, but they had a right to rely upon its effects, which included defense counsel's right to take comfort in the belief that he did not have to prepare to cross-examine an expert witness upon a highly technical medical subject relating to the crucial issue of his client's sanity.

The testimony of Dr. Anneberg was critical to the State's case, of course, because all of the other expert testimony in the case was favorable to the defendant on the issue of sanity. The other doctors testified that Hayes lacked substantial capacity to appreciate the wrongfulness of his conduct and was unable to conform his conduct to the requirements of the law. Therefore, without Anneberg's questioned testimony, the State would not have been able to get to the jury on the issue of sanity.[1]

When the Anneberg testimony came in, defense counsel asserted surprise[2]—which is certainly understandable—and moved to strike the testimony and for a mistrial. These motions were denied—not because they were not well taken but because the judge finally decided that the testimony was not prejudicial. Counsel should have requested a continuance to prepare his cross-examination of this doctor—but no such request was made. In any event, I am of the opinion that because of the violation of the court's order by the prosecution, the defendant was denied the opportunity for effective cross-examination. I say "effective" cross-examination advisedly. For a lawyer, without fault on his part, to be forced to confront a psychiatrist on the ultimate issue of his client's sanity without preparation and after having been led by a court order to believe that it was unnecessary for him to prepare for such an experience, is to, in fact, deny his client the opportunity to fairly and effectively confront the witness. This, to me, is a denial of defendant's due-process rights.

In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the United States Supreme Court said:

"The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' This right is secured for defendants in state as well as federal criminal proceedings under *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Confrontation means more than being allowed to confront the witness physically. 'Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination.' *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). Professor Wigmore stated:

1. I give no credence whatever to a lay witness' testimony on the highly technical medical question of a person's sanity or the lack of it and, therefore, as a matter of law discredit all lay testimony on the subject.

2. The record discloses the following partial argument of defense counsel:

". . . I think it's highly prejudicial to the defendant because it is a statement made by the doctor to the ultimate conclusion without the proper ability to cross examine him without the availability of the written report where he states his findings in a concise writtin [sic] report so that a proper examination could be made from that. Furthermore, I think that it naturally came as a surprise to me in that we had agreed in advance that that would not come up and I was unprepared at that time to counteract the answering by Dr. Anneberg of the ultimate issue in the case, and for these reasons, I would move for a mistrial in the case."

" 'The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.* The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.' (Emphasis in original) 5 J. Wigmore, Evidence § 1395, p. 123, (3d ed. 1940)." 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353.

In *Holm v. State*, Wyo., 404 P.2d 740, 744 (1965), we said:

"One of the most basic elements of due process is the right of each party to be apprised of all the evidence upon which an issue is to be decided, with the right to examine, explain or rebut such evidence. *New Jersey State Board of Optometrists v. Nemitz*, 21 N.J.Super. 18, 90 A.2d 740, 745; *State v. Gordon*, 225 N.C. 241, 34 S.E.2d 414, 416. And, the right to hear and controvert all evidence upon which a factual adjudication is to be made includes the right to hear and cross-examine witnesses. *Pennsylvania State Athletic Commission v. Bratton*, 177 Pa.Super. 598, 112 A.2d 422, 425; *In re Buchman's Estate*, 123 Cal.App.2d 546, 267 P.2d 73, 84, 47 A.L.R.2d 291, Id., 132 Cal.App.2d 81, 281 P.2d 608, 53 A.L.R.2d 451, certiorari denied 350 U.S. 873, 76 S.Ct. 118, 100 L.Ed. 772."

It might be argued by many—perhaps even most—that the defendant's counsel was furnished the "opportunity" to cross-examine Anneberg as required by *Davis v. Alaska*, supra, and *Holm v. State*, supra— but I would not agree. He certainly was not given the opportunity to effectively cross-examine. Perhaps I have been a trial lawyer too long, but those years in the courtroom permit me to fantasize vividly the scene where defense counsel has not prepared himself to do adversary battle with the psychiatrist on the ultimate question of his client's sanity because he relies upon the court's order which says that there will be no such encounter. All of a sudden he is called upon to cross-examine in a highly technical field of law—without preparation. His resulting efforts will, by definition, be ineffective unless he is some sort of a skilled specialist in this isolated aspect of trial work—and the record does not reflect this to be the case.

The result of no preparation is *ineffective* cross-examination and—without criticizing counsel for defense in any way—it can be said that the cross-examination of Anneberg in this case was truly ineffective. Lack of preparation has, therefore, resulted in defendant's lack of opportunity to confront the hostile witness who has testified against him. It is, therefore a denial of the defendant's right of due process of law.

In my opinion, the court erred when it held the questioned testimony not to be prejudicial.

In *State v. Smith*, 189 Wash. 422, 65 P.2d 1075 (1937), an assault and battery case, the prosecutor violated a court order to refrain from asking the defendant about his dishonorable discharge from the Marines and, even though counsel lodged no objection, the court held the violation to be prejudicial as a matter of law. The court said:

". . . In propounding the question, counsel clearly violated the ruling of the court theretofore made. The question was highly prejudicial and of such a nature that the prejudice largely consists in the mere asking of the question. The fact that the question was not objected to is not controlling. It may well be that an objection to such a question, even though sustained, is more damaging to a defendant's case than almost any answer could be. Neither, under the circumstances shown by this record, was a motion to strike the answer and instruct the jury to disregard the same necessary. In any event, in view of the deliberate disregard by counsel of the court's ruling, prejudice must be presumed, and appellant's motion for a new trial should have been granted." 65 P.2d at 1078.

I would have held that the order in limine, with its subsequent violation, served

as a conduit to set up the defendant in a manner which deprived him of his right to effective cross-examination, thereby structuring an error which the United States Supreme Court, in *Davis v. Alaska*, supra, where the opportunity to confront the witness was at issue, has described as

" '. . . constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' . . ."

I would have reversed and remanded.